UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

──────────────────────────────

BOARD OF TRUSTEES OF THE SHEET
METAL WORKERS' LOCAL NO. 71
PENSION FUND,

        Plaintiff,

   v.

GM MECHANICAL HVAC LLC 1 and
URBAN HEATING LLC,

        Defendants.

──────────────────────────────

                                        23-CV-1228-LJV
                                        DECISION & ORDER

On November 28, 2023, the plaintiff, the Board of Trustees of the Sheet Metal

Workers' Local No. 71 Pension Fund ("Local 71"), commenced this action against the

defendants, GM Mechanical HVAC LLC 1 ("GM Mechanical") and Urban Heating LLC

("Urban Heating"), under the Employee Retirement Income Security Act of 1974

("ERISA").[1]  Docket Item 1.

On December 27, 2023, after the defendants failed to appear or respond to the

complaint, Local 71 asked the Clerk of the Court to enter a default against both GM

Mechanical and Urban Heating, Docket Item 5, and the clerk did so that same day,

──────────────────

[1] Local 71 says that GM Mechanical and Urban Heating are one and the same
because the former "changed its legal name to 'Urban Heating LLC'" on June 13, 2023;
"discontinued use of the GM Mechanical name"; and "is now operating" as Urban
Heating.  Docket Item 1 at ¶¶ 9-10 (some capitalization omitted).  GM Mechanical and
Urban Heating have not directly addressed this assertion in their filings, although they
refer to themselves as the "defendants."  *See* Docket Item 15.  Because this issue is not
dispositive to the Court's ruling on the pending motion for a default judgment—and
because Local 71 named GM Mechanical and Urban Heating as separate defendants in
its complaint, *see* Docket Item 1 at 1—the Court refers to GM Mechanical and Urban
Heating collectively as "the defendants" throughout this decision.

Docket Item 6.  For the next six months, there was no docket activity in the case, so on July 9, 2024, this Court ordered Local 71 to "show cause why this case should not be dismissed for failure to prosecute."  Docket Item 7 (bold omitted).  In response, Local 71 advised the Court that after the clerk entered a default, GM Mechanical's owner, Ronnie R. Shanklin Sr.,[2] reached out to Local 71's counsel, and Local 71 then "conducted a review to determine whether to continue litigation and incur the additional costs." Docket Item 8 at ¶¶ 9-10.  Local 71 also said that it had decided to proceed with the case[3] and intended to file a motion for a default judgment "in the coming days."  *Id.* at ¶ 12.  The very next day, Local 71 filed that motion.  *See* Docket Item 9.

When the defendants did not respond to the motion for a default judgment by the deadline to do so, this Court ordered them to show cause why the motion for a default judgment should not be granted.  Docket Item 11.  On September 20, 2024, counsel for the defendants filed a letter explaining that she had just been retained and seeking an extension of time.  Docket Item 13.  After the Court granted that extension, Docket Item 14, the defendants filed a response opposing the motion for a default judgment and asking this Court to vacate the default,[4] Docket Item 15.  Local 71 then replied.  Docket Items 18 and 18-5.

---

[2] The affidavit filed by Local 71 identified Shanklin as the "owner of . . . GM Mechanical," Docket Item 8 at ¶ 9; Shanklin subsequently filed a declaration in which he identified himself as the "former owner" of both GM Mechanical and Urban Heating, Docket Item 15-1 at ¶ 1.  To the extent that these representations are inconsistent, this Court need not resolve that issue to rule on the pending motion.

[3] The Court finds that Local 71 provided good reason why the case should not be dismissed for failure to prosecute and therefore considers its motion for a default judgment.  *See* Docket Items 7 and 8.

[4] The defendants ask this Court to vacate the entry of a default judgment against them.  *See* Docket Item 15 at 4, 6.  But because only a default—not a default

For the reasons that follow, the Court vacates the default and denies the motion for a default judgment.

## **LEGAL PRINCIPLES**

Federal Rule of Civil Procedure 55 "provides a two-step process for obtaining a default judgment." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). First, the plaintiff must secure the clerk's entry of default by demonstrating—"by affidavit or otherwise"—that the opposing party "has failed to plead or otherwise defend" the action. Fed. R. Civ. P. 55(a). Second, the plaintiff then must "seek a judgment by default under Rule 55(b)." *Green*, 420 F.3d at 104. "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," a default judgment may be obtained from the clerk; "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

"[A]fter [a] default is entered, 'the court may set aside an entry of default for good cause.'" *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (per curiam) (alteration and emphasis omitted) (quoting Fed. R. Civ. P. 55(c)). "Because Rule 55(c) does not define the term 'good cause,' the Second Circuit has established three criteria that must be assessed in order to decide whether to relieve a party from [a] default or from a default judgment." *Id.* (alterations omitted) (quoting *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993)). "The[] criteria are: '(1) the willfulness of

---

judgment—has been entered, the Court deems their request to be a motion to vacate the clerk's entry of default.

default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'"  *Id.* (quoting *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)).  Courts consider those same factors in deciding whether to enter a default judgment in the first instance.[5]  *See Deep Foods Inc. v. Deep Foods Inc.*, 419 F. Supp. 3d 569, 576-77 (W.D.N.Y. 2019).

Decisions about "whether to enter [a] default judgment" or to vacate an entry of default are "committed to the district court's discretion."  *See id.* at 577 (quoting *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015)); *Enron*, 10 F.3d at 95 ("The dispositions of motions for entries of defaults and default judgments and relief from the same . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.").  "[I]n light of the Second Circuit's 'oft-stated preference for resolving disputes on the merits,' default judgments are 'generally disfavored,' and doubts should be resolved in favor of the defaulting party."  *United*

---

[5] A party moving for a default judgment also must show "that the unchallenged allegations and all reasonable inferences drawn from the evidence provided establish the defendant's liability on each asserted cause of action."  *LG Cap. Funding, LLC v. Accelera Innovations, Inc.*, 2018 WL 5456670, at *4 (E.D.N.Y. Aug. 13, 2018); *see Bricklayers*, 779 F.3d at 187.  That is, even though a party in default "is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability," *Deep Foods Inc. v. Deep Foods Inc.*, 419 F. Supp. 3d 569, 576 (W.D.N.Y. 2019) (quoting *Philip Morris USA Inc. v. 5 Brothers Grocery Corp.*, 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014)), and the non-defaulting party is "entitled to all reasonable inferences from the evidence offered," *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981), the party seeking a default judgment still must show that the allegations in the complaint establish the defendant's liability as a matter of law.  But because this Court finds that the clerk's entry of default should be vacated and the motion for a default judgment denied, it need not and does not reach the question of whether the complaint's allegations establish the defendants' liability.

*States v. Veeraswamy*, 2024 WL 5036483, at \*7 (E.D.N.Y. Dec. 9, 2024) (quoting *Enron*, 10 F.3d at 95-96); *see also Green*, 420 F.3d at 104 (noting that "a default judgment is 'the most severe sanction which the court may apply'" (quoting *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995))).  Moreover, courts "impose a less stringent standard upon the defaulting party when it seeks to vacate an entry of default rather than a default judgment."  *Phelan v. Chin*, 2012 WL 3597409, at \*1 (W.D.N.Y. Aug. 20, 2012) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir.1981)).

## DISCUSSION

Local 71 argues that the three factors delineated above—willfulness of default, availability of meritorious defenses, and prejudice to the plaintiff, *Bricklayers*, 779 F.3d at 186—weigh in favor of granting its motion for a default judgment.  *See* Docket Item 18-5 at 3-5.  The defendants say the exact opposite—that those same factors weigh in favor of vacating the default and denying Local 71's motion.  *See* Docket Item 15 at 3-6. This Court agrees with the defendants.

## I.    WILLFULNESS OF DEFAULT

The Second Circuit has "'interpreted "willfulness," in the context of a default, to refer to conduct that is more than merely negligent or careless,' but is instead 'egregious and . . . not satisfactorily explained.'"  *Bricklayers*, 779 F.3d at 186 (alteration in original) (quoting *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998)).

The defendants say that their default was "not willful," noting that they "respond[ed] to the . . . complaint by engaging in settlement negotiations with" Local 71, and that those "settlement negotiations continued, on and off, . . . until September

2024."  Docket Item 15 at 4; *see* Docket Item 15-1 at ¶¶ 1-2, 7.  They also say that they did not have counsel until the same month—September 2024—and thus lacked the litigation experience and legal training necessary to understand the full import and consequences of their failure to answer.  Docket 15 at 4-5; Docket Item 15-1 at ¶¶ 4, 6-8.

Local 71 counters that the defendants previously had been sued under ERISA and had defaulted in a case similar to this one in the Eastern District of Virginia: *Board of Trustees, Sheet Metal Workers' National Pension Fund v. Urban Heating, LLC*, Case No. 23-cv-137 (E.D. Va. Jan. 31, 2023).  Docket Item 18-5 at 3-4.  Thus, it says, "[w]hile [the d]efendants are not attorneys, they should have known, based on their own experience in the [Eastern District of Virginia] case, that their failure to respond to court filings could result in a default judgment."  *Id.* at 4.

The question here is a close one:  Although the defendants note that they were engaged in settlement negotiations throughout the course of this litigation, Docket Item 15 at 4-5—an assertion that Local 71 does not contest, *see* Docket Item 18-5 at 3-4—a "defendant's responsibility to file a responsive pleading . . . is not obviated by participating in efforts which could, in theory, later resolve the case."  *Bricklayers*, 779 F.3d at 186.  Moreover, while "as a general rule a district court should grant . . . default judgment[s] sparingly and . . . set aside the entry of default freely when the defaulting party is appearing pro se," *Enron*, 10 F.3d at 96 (italics omitted), the defendants here are not individuals but two limited liability companies that were required to obtain counsel to appear, *see Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("[A] limited liability company . . . may appear in federal court only through a licensed

attorney."). And the defendants themselves concede that "an argument can be made that the[y] should have hired [c]ounsel at an earlier stage of [the] litigation." Docket Item 15 at 5.

Nonetheless, because the defendants engaged in negotiations and were not represented by counsel until September 2024, Docket Item 15 at 4-5; Docket Item 15-1 at ¶¶ 17-18, and because counsel then immediately took steps to respond to the pending motion for a default judgment, *see* Docket Items 13 and 15, this Court finds that the defendants' conduct did not cross the line separating the merely negligent from the truly egregious. *See Bricklayers*, 779 F.3d at 186. For that reason, the first factor favors the defendants.

## II.    AVAILABILITY OF MERITORIOUS DEFENSES

"A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron*, 10 F.3d at 98 (citation omitted). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.*

As noted above, Local 71 brings an ERISA claim against the defendants. Docket Item 1 at ¶¶ 24-31. The defendants say they have a complete defense to that claim because "ERISA requires that all disputes arising out of a determination made under [the] withdrawal liability sections must be arbitrated" if a party so requests, and they requested arbitration within ERISA's time requirements. Docket Item 15 at 5 (quoting *Rao v. Prest Metals*, 149 F. Supp. 2d 1, 6 (E.D.N.Y. 2001)). In support of their argument, the defendants submitted a declaration from Shanklin as well as a copy of

7

the email chain that includes Shanklin's request for arbitration on May 20, 2022.  Docket Items 15-1 and 15-2.

Local 71 concedes that ERISA requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of [the statute] shall be resolved through arbitration." Docket Item 18-5 at 4 (quoting 29 U.S.C. § 1401).  But it says that the defendants "did not request arbitration from" Local 71; instead, it says, the request to which the defendants refer was sent to a "separate legal entity," the Sheet Metal Workers' National Pension Fund, which "pursued its own withdrawal liability [action] against [the d]efendants."  *Id.* at 3-5; *see* Docket Item 18-2 at ¶¶ 1, 7-9 (declaration of the "[f]unds [a]dministrator" for Local 71 stating that "GM Mechanical did not request arbitration" from Local 71 and that he "had not seen and . . . was not aware of [Shanklin's email] prior to its submission to the Court," further noting that the Sheet Metal Workers' National Pension Fund "did not notify [him] of the email").  In other words, Local 71 says that Shanklin may have requested arbitration, but not of this dispute.  Local 71 also notes that Shanklin's email requesting arbitration was sent three months before Local 71 sent the "notice of withdrawal" under ERISA relevant to this case.  *See* Docket Item 18-5 at 5; Docket Item 18 at ¶ 8.

This Court need not and does not reach the question of whether the email submitted by the defendants was an effective request under ERISA to arbitrate this matter.  Instead, because the defendants have raised "a potentially meritorious defense"—one that may hinge on material issues of fact that it would be "inappropriate" to resolve in this posture—the second factor also weighs in favor of vacating the clerk's

entry of default and denying the motion for a default judgment.  *See King Vision Pay Per View v. Esposito*, 2002 WL 31413806, at *1 (S.D.N.Y. Oct. 24, 2002) (granting motion to vacate default judgment where defendant "presented a potentially meritorious defense" that "raise[d] a material issue of fact").

## III.   PREJUDICE TO THE PLAINTIFF

Finally, Local 71 says that it "would be prejudiced if the Court were to" deny its motion for a default judgment and vacate the clerk's entry of default.  Docket Item 18-5 at 5.  Indeed, it says that it already has "incurred significant cost[s] bringing th[is] suit to recoup [the] money" owed to it.  Docket Item 18 at ¶ 16.  In other words, Local 71 argues that it would be prejudiced because it has invested significant resources in its attempt to recover money owed to it and that it will have to wait even longer to obtain that money if the default is vacated and the case proceeds on the merits.  *See id.*; Docket Item 18-5 at 5.

But that always can be said in the context of a motion to vacate a default.  And for that reason, courts have held that to establish prejudice in the default context, a plaintiff must do more than show that vacating a default or denying a default judgment "will delay [its] recovery on the claim or will require [it] to try the case on the merits and incur the attendant costs."  *Smith v. Farm Fam. Cas. Ins. Co.*, 2010 WL 11541930, at *2 (N.D.N.Y. Jan. 25, 2010) (citing *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)).  "Rather, the plaintiff must show that the default has hindered [its] ability to pursue the cause of action, which may include the loss of evidence or increased discovery

difficulties."[6]  *Id.*; *see Green*, 420 F.3d at 110 ("[D]elay alone is not a sufficient basis for

establishing prejudice.  Something more is needed.  For example, delay may thwart

plaintiff's recovery or remedy . . .[,] result in the loss of evidence, create increased

difficulties of discovery, or provide greater opportunity for fraud and collusion." (citations

and internal quotation marks omitted)).

Local 71 identifies no such specific prejudice that it would suffer here should the

Court vacate the entry of default.  *See* Docket Item 18 at ¶ 16; Docket Item 18-5 at 5.

And its contention that delay would be prejudicial is undermined by the fact that Local

71 itself contributed in no small part to the slow pace of this litigation.  After obtaining

the clerk's entry of default, Local 71 waited more than seven months to move for a

default judgment, Docket Items 6 and 9, apparently because of the contact between the

parties that the defendants cite as a factor that contributed to their failure to answer the

complaint, Docket Item 8 at ¶¶ 8-12; Docket Item 15 at 4-5; *see supra* Section I.  What

is more, Local 71 did not file its motion for a default judgment until nearly a month after

---

[6] Local 71 cites *Broadcast Music, Inc. v. Buffalo Wing Joint And Pub, LLC*, 431 F. Supp. 3d 147 (W.D.N.Y. 2019), for the proposition that failing to grant a default judgment may "prejudice [p]laintiffs in that they have expended time and money in prosecuting th[eir] case[ and] deserve an adjudication."  Docket Item 18-5 at 5 (quoting *Buffalo Wing*, 431 F. Supp. 2d at 154).  But both *Buffalo Wing* and the case it quotes—*Broadcast Music, Inc. v. Bayside Boys, Inc.*, 2013 WL 5352599 (E.D.N.Y. Sept. 23, 2013)—were cases in which the defendants had failed to respond in any way throughout the course of litigation and the defaulting defendants had not even opposed the motion for a default judgment.  *See Buffalo Wing*, 431 F. Supp. 3d at 153; *Bayside Boys*, 2013 WL 5352599, at *5.  In any event, the caselaw is clear that the mere fact that the plaintiff has expended significant resources in litigating a case is not enough to show prejudice in this context.  *See Smith*, 2010 WL 11541930, at *2; *Veeraswamy*, 2024 WL 5036483, at *7 ("At bottom, the [plaintiff's] claimed prejudice amounts to complaints associated with prolonged litigation and additional costs—complaints that are insufficient to establish prejudice that would override a request to set aside a default." (collecting cases)).

this Court ordered it to show cause why the matter should not be dismissed for failure to prosecute. *See* Docket Items 7 and 9. "These are not the actions of a party who fears prejudice absent the quick resolution of a matter." *See Esposito*, 2002 WL 31413806, at *2; *cf. Enron*, 10 F.3d at 98 ("The fact that plaintiff waited over a year before seeking [entry of default] strongly suggests that some further delay will not unduly prejudice it.").

Therefore, the third factor likewise weighs in favor of the defendants.

## CONCLUSION

In sum, for the reasons stated above—and in light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," *Enron*, 10 F.3d at 95—the relevant factors weigh in favor of vacating the clerk's entry of default and against granting the plaintiff's motion for a default judgment. Local 71's motion for a default judgment therefore is DENIED and the defendants' request that this Court vacate the clerk's entry of default and grant them leave to answer is GRANTED.

The Clerk of the Court shall VACATE the entry of default, and the defendants shall answer the complaint **within 21 days of the date of this decision and order**.


SO ORDERED.

Dated:   February 10, 2025
         Buffalo, New York


                                             */s/ Lawrence J. Vilardo*
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE